**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|   |   |   |
|---|---|---|
| **NICHOLAS PETERSON[1]** *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO.  JKB-16-3629 |
| **M.J.J., INC.,** *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM</u>**

*I. Background*

This Fair Labor Standards Act ("FLSA") case, which includes supplemental claims under Maryland's Wage and Hour Law ("MWHL") and the Maryland Wage Payment and Collection Law ("MWPCL"), was filed by two Plaintiffs against M.J.J., Inc., trading as The Suburban House ("M.J.J."), and against Mark Horowitz, an officer and owner of M.J.J., on November 3, 2016.  (Compl., ECF No. 1.)  On February 6, 2017, when Defendants had not timely filed answers, the Court ordered Plaintiffs to file and serve a motion for Clerk's entry of default or to provide a report why such a motion would be inappropriate.  (ECF No. 9.)  The same day, Plaintiffs filed their motion for Clerk's entry of default (ECF No. 10), and Defendants filed their motion for extension of time to answer (ECF No. 11).  The Court granted the extension (ECF No. 14), thereby rendering Plaintiffs' motion for entry of default (ECF No. 10) moot.

On February 16, 2017, Defendants filed a motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 18.)  Within the time permitted by Federal Rule of Civil

---

[1] The Clerk will be directed to amend the docket to reflect the correct spelling of Plaintiff Peterson's first name.

Procedure 15(a)(1)(B), Plaintiffs filed an amended complaint, adding a third Plaintiff, as a matter of course (ECF No. 19), thereby rendering Defendants' motion (ECF No. 18) moot. Although the motion was then moot, Plaintiffs filed their opposition to it (ECF No. 21). Defendants did not reply substantively, noting the mootness of their original motion. (ECF No. 26.) Counsel for Defendants then filed another motion to dismiss or, in the alternative, for summary judgment. (ECF No. 30.) Plaintiffs responded with a motion for leave to file a second amended complaint (ECF No. 31) and their opposition to Defendants' motion (ECF No. 34). Plaintiffs also filed a motion for conditional certification of their FLSA class. (ECF No. 35.) The motion for leave to file a second amended complaint has been fully briefed (ECF Nos. 36, 43).

Defendants sought and received an extension of time within which to reply on their dispositive motion as well as to respond to Plaintiffs' motion for class certification. (ECF Nos. 37, 38, 41, 42.) Roughly two weeks later, defense counsel sought a seven-day stay of all deadlines; counsel indicated Defendants had not paid for legal services and would not be able to pay in the future. (ECF No. 44.) Further, defense counsel stated she had provided Defendants with her notice of intent to withdraw, as required by the Court's Local Rule 101.2 (D. Md. 2016), and that Defendants were aware that the corporate Defendant, M.J.J., could not appear *pro se*. (Defs.' Mot. Stay 1.) She also stated, "Defendants are in the process of trying to determine what steps to take moving forward, regarding how and whether to finance the defense of this matter," and she requested the seven-day stay to enable Defendants to make new arrangements. (*Id.* 1-2.) The Court granted the stay (ECF No. 47) and granted defense counsel's motion to withdraw (ECF Nos. 48, 49).

After the Court had followed its usual practice and mailed notice to M.J.J. and Horowitz of their counsel's withdrawal (ECF No. 50), the Court lifted the stay (ECF No. 51). The

correspondence (ECF No. 50) was returned as undeliverable to Horowitz (ECF No. 52); the mail sent to the corporate Defendant, M.J.J., was not returned to the Court, and the Court presumes it was delivered to M.J.J.  Thereafter, Plaintiffs moved the Court to order M.J.J. to show cause why a default should not be entered against it, pursuant to Local Rule 101.2.b.  (ECF No. 53.)  The motion was granted on July 19, 2017, and the Court required M.J.J.'s response within twenty-one days of the date of the order.  (ECF No. 54.)  Upon finding that the Clerk's office had not mailed the show-cause order to Defendants, the Court directed the Clerk to mail it on August 7.  More than twenty-one days have passed since the time of mailing, and M.J.J. has not responded.

Although it would be a simple matter to declare M.J.J. in default for not having secured representation by counsel, doing so requires the Court to overlook both Defendants' pending dispositive motion, which asserts substantial arguments as to the viability of Plaintiffs' case, and Defendants' vigorous opposition to Plaintiffs' motion for leave to file a second amended complaint.  Instead, the fairer course is not to regard those briefing papers as null and void but to give full consideration to them.  Beyond that, the question of liability of the individual Defendant, Horowitz, must be determined, and the legal arguments pertaining to him apply equally to the corporate Defendant, M.J.J.; declaring M.J.J. in default would only complicate the decision-making in this case.  If, after these motions are decided, the case remains pending, then it is possible the Court might consider it appropriate to revisit Plaintiffs' request for default against M.J.J.  Consequently, the Court shall first address Defendants' pending dispositive motion, construed initially as a motion to dismiss.

## II.  Standard for Dismissal under Rule 12(b)(1)

The burden of proving subject-matter jurisdiction is on the plaintiff.  A challenge to jurisdiction may be either facial, *i.e.*, the complaint fails to allege facts upon which subject-

matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). *See also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Richmond, Fredericksburg & Potomac Ry. Co.*, 945 F.2d 765, 768 (4th Cir. 1991) (same). In the case of a factual challenge, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Adams*, 697 F.2d at 1219).

### III. *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

### IV. Analysis of Motion to Dismiss

#### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The Court does not find a clear argument for dismissal under Rule 12(b)(1). Instead, Defendants' argument that Plaintiffs Peterson and Danson are not covered by the FLSA because they were, at the time in issue, prisoners on work release is properly cast as a Rule 12(b)(6) argument. Plaintiffs Peterson and Danson have sufficiently alleged Article III standing, which requires a showing that "[t]he plaintiff . . . ha[s] suffered or [is] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *See also Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (plaintiff's standing to sue in federal court is "an integral component of the case or controversy requirement" of Article III).

Here, Peterson and Danson allege they were not paid all of the wages the law requires. That is sufficient to assert Article III standing. Whether these two Plaintiffs fall within the "zone of interests" protected by the FLSA is not a question of standing, which is a matter of subject-matter jurisdiction, but a question of whether they have adequately stated a claim for relief under the FLSA. *See Lexmark*, 134 S. Ct. at 1387; *CC Recovery v. Cecil Cty., Md.*, 26 F. Supp. 3d 487, 491 (D. Md. 2014).

#### B. Motion to Dismiss for Failure to State a Claim for Relief

Defendants attack the adequacy of the complaint on two grounds: *First*, does the complaint allege sufficient facts to show that Peterson and Danson fall within the zone of interests protected by the FLSA and, if so, are they similarly situated to the members of the class

they seek to represent? *Second*, have Plaintiffs plausibly alleged that Defendants failed to pay minimum wages and overtime wages? These questions will be addressed in turn.

### *1. Peterson and Danson*

Defendants argue Peterson and Danson worked for M.J.J. while they were prisoners, the FLSA applies only to individuals who are "employees," prisoners do not qualify as employees under the FLSA, and, therefore, Peterson and Danson do not have a viable cause of action against M.J.J. (Def.'s Mot. Dismiss or Summ. J. Supp. Mem. 22-25, ECF No. 30.) Defendants cite various cases, but none supports their argument on this point. Instead, the cases support the opposite conclusion when their analysis is applied to the circumstances of this case.

Peterson and Danson allege they worked for M.J.J., a private employer, while on work release with the Baltimore County Department of Corrections. (Am. Compl. ¶¶ 11, 12, ECF No. 19.) They also allege they were employed by M.J.J. at The Suburban House Deli, in Pikesville, Maryland, as hourly tipped employees. (*Id.* ¶ 10.) Peterson's work-release employment was from October 2014 through December 2014. (*Id.* ¶ 12.) After he was released from custody on April 15, 2015, Peterson was rehired by Defendants and worked for approximately one additional month into May 2015. (*Id.*) Danson worked for Defendants while on work release from January 6, 2014, to April 3, 2014. (*Id.* ¶ 11.) After her release on April 3, 2014, she continued to work for Defendants until May 10, 2014. (*Id.*) Thus, Peterson and Danson were employed by Defendants while on work release and afterward.

It is well established that individuals who are working in prison jobs while incarcerated are not accorded FLSA protection. *See, e.g.*, *Harker v. State Use Industries*, 990 F.2d 131, 135-36 (4th Cir. 1993) (FLSA does not apply to inmate labor). *See also Henthorn v. Dep't of Navy*, 29 F.3d 682, 694 (D.C. Cir. 1994) (FLSA does not apply to prisoner labor outside prison walls

6

where work is required by inmate's custodian, regardless of whether inmate is working for custodian or other entity). On the other hand, if a "prisoner has freely contracted with a non-prison employer to sell his labor," then the FLSA could well apply to such an individual to allow minimum wage and overtime protection. *Id.* at 686-87. The Fourth Circuit's opinion in *Harker* carefully distinguished the inmate's in-prison labor in *Harker* from the scenario presented in *Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990), in which an inmate was released from jail each day to work for a private-sector construction company (owned by the sheriff's son-in-law), but was paid only a pittance compared to what the FLSA requires. *Harker* noted that Watson's "labor took place outside the jail, and that it promoted unfair competition by giving the son-in-law's construction company a distinct commercial advantage." 990 F.2d at 135-36.

The distinguishing factors between *Harker* and *Watson* are the basis for concluding the FLSA *does* apply to Peterson's and Danson's labor for the Suburban House Deli as hourly tipped employees while they were on work release from the Baltimore County Department of Corrections. Their work for the restaurant, which was a private enterprise operated outside of prison walls and which served the general public, was not mandated by the prison. Thus, all of Peterson's and Danson's labor, including that while on work release, falls within the zone of interests protected by the FLSA.

Defendants have also argued that Peterson and Danson are not similarly situated to nonprisoner employees of M.J.J. and, consequently, cannot serve as representatives in this putative class and collective action. (Defs.' Supp. Mem. 25.) However, they have not sufficiently developed this argument for the Court to consider. Thus, the Court concludes this contention is without merit. Further, the third Plaintiff, Cali Fitzgerald, was not on work release

and her ability to serve as a representative is undisputed, regardless of whether Peterson and Danson are suitable representatives.[2]

### 2. *Sufficiency of Allegations of Violation of the FLSA*

Defendants present a much stronger argument that Plaintiffs have failed to allege a plausible violation of the FLSA's requirement to pay employees either minimum wage or overtime wages. The Court notes this same argument was presented in Defendants' now-moot original motion to dismiss (Defs.' Mot. Dismiss Supp. Mem. 11-14, ECF No. 18-1), and that Plaintiffs' later-filed amended complaint did not cure the deficiency of the original complaint.

As to each of the named Plaintiffs and the claim of failure to pay overtime, the amended complaint simply states, "Throughout [the Plaintiff's] employment . . . Plaintiff . . . regularly worked over forty hours a week yet was not paid at the proper overtime rate required by the FLSA and MWHL." (Am. Compl. ¶¶ 11, 12, 13.) That is insufficient. Plaintiffs have merely alleged the bare element of their cause of action regarding overtime wages, *i.e.*, failure to pay overtime wages. This amounts to a legal conclusion couched as a factual allegation, which, under the *Iqbal-Twombly* standard, is due no deference by the Court when considering a motion to dismiss for failure to state a claim for relief. While detailed factual allegations are not needed, a complaint must still include sufficient factual content from which the Court can infer Defendants failed to pay overtime wages.

In *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017), *pet. for cert. filed*, 86 U.S.L.W. 125 (U.S. June 6, 2017) (No. 16-1449), the Fourth Circuit discussed the need for a plaintiff to supply adequate factual content in a complaint for unpaid overtime wages:

> [T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to

---

[2] Six other individuals have "opted in" to this case. (ECF Nos. 20, 22, 25, 27, 28, 29.)

pay the requisite overtime premium for those overtime hours. Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay.

At the same time, however, we emphasize that the standard we today adopt does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours. Rather, this standard is intended "to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" Thus, to state a plausible FLSA overtime claim, plaintiffs "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." A plaintiff may meet this initial standard "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other facts* that will permit the court to find plausibility."

846 F.3d at 777 (citations omitted).[3]

Oddly, Plaintiffs argue that *Hall* "is totally inapposite" to the instant case. (Pls.' Opp'n 16, ECF No. 34.) Although *Hall* dealt only with an overtime claim rather than the overtime claim and the minimum wage claim in the present case, it is certainly not inapposite. It did not announce a new standard for pleading an FLSA claim but merely applied the familiar *Iqbal-Twombly* standard to an FLSA overtime claim. *Hall* is completely apposite to Plaintiffs' case. Moreover, *Hall* was decided prior to Plaintiffs' filing of their amended complaint, but Plaintiffs did not take heed of its admonitions regarding sufficiency of this kind of claim despite Defendants' then-pending motion to dismiss the original complaint for failure to comply with the *Iqbal-Twombly* standard.

Since Plaintiffs' complaint fails to meet the standard for pleading a claim of unpaid overtime wages, the Court shall grant Defendants' motion to dismiss and shall dismiss Count II, Count IV, Count V, and Count VI for failure to state a claim for relief.

---

[3] The pending petition for certiorari in *Hall* is focused on a different issue pertaining to joint employment.

Counts I and III are premised upon a failure to pay minimum wages under the FLSA and MWHL, respectively. Plaintiffs allege in Count I, "Defendants have at all material times failed to pay Plaintiffs, and other similarly situated hourly tipped employees, the proper minimum wage rate, free and clear of deductions and in a timely manner, and otherwise failed to comply with the requirements of 29 U.S.C. § 203(m)." (Am. Compl. ¶ 33.) In Count III, they allege, "Defendants have, at all material times, failed to pay Plaintiffs, and other similarly situated hourly tipped employees, a proper minimum wage rate, free and clear and in a timely manner, and otherwise failed to comply with the requirements of Md. Ann. Code LE art. § 3-419." (*Id.* ¶ 36.)

A review of the entire complaint reveals its dependence upon vague, conclusional allegations. Nowhere in the complaint is there sufficient factual content that allows an inference that the wages actually received by Plaintiffs were less than minimum wage. The complaint's failure to meet the well-established *Iqbal-Twombly* pleading standard requires granting Defendants' motion to dismiss as to Counts I and III.

The only surviving claim is Danson's allegation that she was not given her last two paychecks, contrary to the MWPCL. (*Id.* ¶¶ 20(e), 42.) As to this portion of Count VII, Defendants' motion to dismiss will be denied, but otherwise granted as to the rest of that count. However, because the Court has disposed of the only federal-question claims in the case—and diversity jurisdiction does not exist—the Court will decline to exercise supplemental jurisdiction over the MWPCL claim. That portion of the case will be dismissed without prejudice for Danson to refile in Maryland state court.

### V. *Motion for Leave to File a Second Amended Complaint*

Seeking a third bite at the apple, Plaintiffs ask the Court's leave to file a second amended complaint that adds new factual allegations and new plaintiffs. Their motion will be denied.

Generally, the standard for deciding a motion to amend a complaint is governed by Federal Rule of Civil Procedure 15(a)(2), which directs the Court to "freely give leave when justice so requires." The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). A proposed amendment is considered futile if it cannot withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Given the history of this case, the Court has no trouble concluding that Defendants will be prejudiced. Plaintiffs had a defective complaint from the beginning, and Defendants pointed this out in their first motion to dismiss. Neither the original complaint nor the amended complaint complies with the *Iqbal-Twombly* standard for stating a claim for relief on Plaintiffs' overtime and minimum wage claims. After the considerable effort Defendants have expended in litigating this case, it is only belatedly that Plaintiffs chose to file a complaint that might be judged as sufficient. Plaintiffs have not explained why they failed to include these additional allegations in their first two complaints. For example, they have not stated they were prevented from including them by actions of the Defendants or other third parties.

For the reasons stated in Defendants' opposition (ECF No. 36), the Court shall deny Plaintiffs' motion.

## *VI. Conclusion*

The Court will grant Defendants' motion to dismiss for failure to state a claim as to all counts except for that portion of Count VII pertaining to Danson's failure to receive her last two paychecks. That claim will be dismissed without prejudice to refile in state court. Plaintiffs' motion for leave to file a second amended complaint will be denied. A separate order follows.

DATED this 13th day of September, 2017.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge